UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS BYARD, | : |
| Plaintiff, | : |
| v. | : No. 2:16-cv-06147 |
| NANCY ANN BERRYHILL, Acting Commissioner Social Security Administration, | : |
| Defendant. | : |

**O P I N I O N**
Plaintiff's Request for Review, ECF No. 17 – Denied
Report and Recommendation, ECF No. 21 – Adopted

**Joseph F. Leeson, Jr.**                                                                                  **August 13, 2018**
**United States District Judge**

## I.    Introduction

Plaintiff Marcus Byard filed an application for a period of disability and disability insurance benefits with the Social Security Administration, which was denied. After his request for review was denied by the Appeals Council, Byard filed the instant action pursuant to 42 U.S.C. § 405(g) seeking review. On April 26, 2018, United States Magistrate Judge Linda K. Caracappa filed a Report and Recommendation ("R&R") recommending that the Request for Review be denied. Byard has filed objections to the R&R. After de novo review, this Court concludes that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence for the reasons set forth herein and in the R&R, and the decision of the Commissioner of Social Security is affirmed. The objections to the R&R are overruled, and the Court adopts Magistrate Judge Caracappa's R&R in its entirety.

## II. Standard of Review

When objections to a report and recommendation have been filed, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x 142, 147 (3d Cir. 2016). The "court may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

## III. Analysis

Byard states that this case "presents one threshold issue which is dispositive of [his] claim: whether he has a severe mental impairment in addition to his intellectual disorder." Pl.'s Objs. 1, ECF No. 22. As explained below, Byard contends that, under the applicable regulations, if he were able to show that he has *both* (1) an IQ score of 60 through 70, *and* (2) a severe mental impairment, then he would qualify as disabled *per se*. It is undisputed that Byard has an IQ score between 60 and 70. The ALJ found, however, that Byard did not have a severe mental impairment, a finding that Magistrate Judge Caracappa determined was supported by substantial evidence. Byard objects to this determination and contends that he has shown that he suffers from a mood disorder that qualifies as a severe mental impairment, thereby entitling him to a finding that he is disabled *per se*.

As Magistrate Judge Caracappa explained, the Social Security Administration's determination of whether a claimant is disabled proceeds according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted). As indicated in the above-quoted passage, if at stage three a claimant has an impairment that "meets or equals one of [the] listings in appendix 1 of [Subpart P] and meets the duration requirement," then the claimant is *per se* disabled, and the analysis need not proceed to steps four and five.

Among the impairments listed in Subpart P, appendix 1, in the 2015 regulations are certain types of mental disorders, including, under Listing 12.05, the disorder of "intellectual disability." 20 C.F.R., Part 404, Subpart P, App. 1, Listing 12.05C (2015).[1] The regulations define "intellectual disability" as referring to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.* The regulations further specify that the required level of severity for this disorder is met when

---

[1] As Byard points out, the Commissioner published a new Listing for intellectual disability that became effective for claims adjudicated on and after January 17, 2017, but because the Commissioner's final decision in this case was issued on May 27, 2015, the 2015 regulations apply here.

certain listed requirements are established. The particular requirements at issue in Byard's case are listed in 12.05C, which provides that a claimant has demonstrated that he or she has an intellectual disability when the following two elements are present: (1) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."[2] *Id.*

With respect to the second element, the Commissioner has explained that the phrase "significant work-related limitation of function" is equivalent to a finding that the impairment is "severe" under step two of the familiar five-step analysis quoted above. S*ee Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003). An impairment is not "severe" if it does not "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921 (2015). As the Court of Appeals for the Third Circuit has observed, however, "[a]lthough the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting Social Security Ruling 85–28, 1985 WL 56856, at *3). In this respect, "[t]he burden placed on an applicant at step two is not an exacting one." Moreover, "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.*

---

[2] "Therefore, to meet or equal Listing 12.05C, a claimant needs to show: (1) a valid verbal, performance, or full scale IQ of 60 through 70, (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function, and (3) that the mental retardation initially manifested during the developmental period, which means before age 22." *Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 265 (3d Cir. 2014). In addition to these three requirements, there is "substantial case law, including Third Circuit decisions, which seem to require proof of deficits in adaptive functioning" as a fourth requirement for Listing 12.05C. *See Mastarone v. Berryhill*, No. CV 16-1421, 2018 WL 783678, at *3 (W.D. Pa. Feb. 8, 2018).

Here, it is undisputed that Byard meets the first element under 12.05C, namely that he had an IQ score between 60 and 70.[3] As mentioned above, however, the ALJ found that Byard did not meet the second element of 12.05C because he had failed to show that he had an additional "severe impairment," a finding that Magistrate Judge Caracappa determined was supported by substantive evidence. Byard objects to this determination and contends that he has successfully shown that he suffers from a "mood disorder" that qualifies as a "severe impairment." Specifically, Byard objects to the R&R's discussion (and the ALJ's interpretation) of the medical reports of Richard Yudell, M.D., Paul Taren, Ph.D., and John Rohar, Ph.D. According to Byard, the reports of Dr. Yudell and Dr. Taren, properly interpreted, support a finding that his mood disorder is a severe impairment. With respect to the report of Dr. Rohar, Byard contends that the ALJ improperly relied on this report, which predates his current application for Social Security benefits. The Court addresses each report, and Byard's related objections, in turn.

**A.      Objections Relating to Report of Richard Yudell, M.D.**

Byard was seen by Dr. Yudell for a biopsychosocial psychiatric evaluation in April 2013. R. 344-53. On his evaluation form, Dr. Yudell noted that Byard's stated reason for his visit was that he had low energy, was depressed, and felt that he needed Adderall. R. 344. In a section of the form titled "Risk Assessment/Safety Factors," which provided three subsections titled "Danger to self," "Danger to others," and "Other risk factors." Dr. Yudell noted that Byard did not report to be a threat to himself, nor did report any "other risk factors." R. 345. But in the "Danger to others" subsection, Dr. Yudell marked a box indicating that Byard reported "thoughts to harm others," and he noted that Byard reported that "if he's crossed or pressured he feels he

---

[3]      Byard had a full scale IQ score of 66 in 2003, when he was eighteen years old. *See* Administrative Record (hereinafter "R.") 256, ECF No. 8.

5
081318

might lose control" and that he had attended anger-management classes. *Id.* Under the next section of the form, titled "Mental Status," Dr. Yudell marked boxes indicating that Byard's "appearance," "behavioral," and "orientation" factors were "within normal limits,"[4] and that Byard's "speech and language" and "overall intelligence and abstract thinking" were "normal." R. 345-46. But he also marked boxes indicating that Byard's "mood/affect" was "depressed" and "anxious," that his "thought process" was characterized by "hallucinations,"[5] that his level of sensorium consciousness was "tired," that he had "tense" motor behavior, and that he had "poor insight," "poor judgment," and "poor life decisions." *Id.* Dr. Yudell diagnosed Byard with "mood disorder with psychotic features" and "post-traumatic stress disorder," and he listed Byard's Global Assessment of Functioning ("GAF") score as 46. R. 351. He prescribed Seroquel XR and listed Byard's prognosis as "good," which was the best of the four options available on the form. R. 352.

>In her written decision, the ALJ summarized Dr. Yudell's report as follows:
>
> During a subsequent psychiatric evaluation in mid-April 2013 at Northeast Community Center, the claimant reported that he was depressed with low energy and "need[ed] something like Adderall to lift [him] up." It was noted that he was no danger to himself or others. In addition, the claimant's mental status exam was normal except for a depressed mood/affect and reported hallucinations, and notably, he had normal attention/concentration and memory. The psychiatrist diagnosed mood disorder with psychotic features, post-traumatic stress disorder, and rule [sic] out attention deficit disorder. The psychiatrist also assigned a Global Assessment Functioning ("GAF") score of 46, which indicates serious symptoms or impairment in social or occupational functioning. However, the psychiatrist also rated the claimant's prognosis as "good" upon prescribing medication (Seroquel).

R. 23 (citations omitted).

---

[4] He also marked a box indicating that Byard's "behavioral" was "cooperative." *Id.*
[5] Byard reported to Dr. Yudell that he hears voices at times, usually the voice of his late father telling him that everything is going to be ok. R. 345.

As Magistrate Judge Caracappa pointed out, the ALJ was mistaken in her statement that Byard did not report posing a danger to others—as summarized above, although Byard did not report posing a threat to himself, he did report having thoughts about harming others. But Magistrate Judge Caracappa determined that this error did not undermine the ALJ's finding that Byard's mood disorder was non-severe. Specifically, Judge Caracappa stated that she did "not find the ALJ's characterization of plaintiff's mental status examination as 'normal except for a depressed mood/affect and reported hallucinations' to be a misinterpretation" of Dr. Yudell's report, observing that Dr. Yudell had found Byard's appearance, behavior, and orientation to be within normal limits, and his attention, concentration, memory, and speech to be normal as well. R&R 13.

Byard objects to Magistrate Judge Caracappa's assessment of the ALJ's interpretation of Dr. Yudell's report, contending that "[t]he ALJ indisputably disregarded Dr. Yudell's assessment of danger to others, as well as his findings of poor insight, poor judgment, tiredness and tense motor behavior, and the ALJ's characterization of these findings as 'normal' was a mistake of fact." Pl.'s Objs. 9 (citations omitted). Byard argues that "the ALJ erred as a matter of law when she found [his] other mental impairment non-severe based on her misinterpretation of Dr. Yudell's psychiatric evaluation." *Id.*

The Court disagrees. Even taking into account Byard's statement that he might lose control if pressured, Dr. Yudell's report does not compel a finding that Byard's mood disorder was severe. As the ALJ indicated, many of the behavioral markers were normal and Dr. Yudell identified Byard's prognosis as "good," the highest that the form allows. Further, Dr. Yudell's discussion of Byard's mood disorder does not include any limitations on occupational ability that would support a finding of severity.

Byard makes a final argument with regard to Dr. Yudell's report, contending that the ALJ improperly disregarded Dr. Yudell's GAF score of 46, which is the only GAF score in Byard's medical history. *See* Pl.'s Objs. 6 n.8. But, as indicated above, the ALJ acknowledged the GAF score in her decision, and Dr. Yudell did not provide any specific limitations to support his GAF rating. Further, the ALJ was not required to find severity based solely on the GAF score. *See Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) ("A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings . . . , and a GAF score of 45, if credited, would not require a finding of disability."); *see also Keller-Price v. Colvin*, No. CIV.A. 13-1117, 2014 WL 4925078, at *5 (W.D. Pa. Sept. 30, 2014) ("[S]tanding alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work."). Accordingly, Byard's objections related to the report of Dr. Yudell are overruled.

**B.     Objections Relating to Report of Paul T. Taren, Ph.D.**

Byard's next objection concerns the report of Dr. Taren, a state agency examiner who evaluated Byard in June 2013 and found that Byard's affective disorder was "severe." R. 51-55. The ALJ did not address Dr. Taren's evaluation in her decision. Magistrate Judge Caracappa acknowledged this omission, but observed that Dr. Taren, despite marking Byard's disorder as "severe," made no findings as to the functional or occupational limitations that would result from the disorder because he had "insufficient evidence" to do so. R&R 13. In these circumstances, Magistrate Judge Caracappa determined that the ALJ was justified in disregarding the opinion of Dr. Taren in favor of the April 2012 report of Dr. Rohar, which is discussed below.

Byard objects that Magistrate Judge Caracappa improperly explained the omission of Dr. Taren's report from the ALJ's decision. According to Byard, where an ALJ is silent on why she

8
081318

declined to reference a report in her findings, a district judge, on review, may not create an explanation for the omission. To support his proposition, Byard cites a Third Circuit case, *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001), in which the court held that where an ALJ fails "to consider all *relevant* and *probative* evidence," a district court may not rectify errors in the ALJ report by "relying on medical records found in its own independent analysis." *See Fargnoli*, 247 F.3d at 44 n.7 (emphasis added). But subsequent Third Circuit case law has clarified the scope of this holding, explaining that "*Fargnoli* does not establish that a district court may not explain an ALJ's failure to cite *irrelevant* evidence." *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (emphasis added)). Here, Dr. Taren's report was inapposite to the ALJ's decision because, as Magistrate Judge Caracappa observed, Dr. Taren "was unable to evaluate what effect [Byard's] affective disorder had on [his] abilities." R&R 13. Magistrate Judge Caracappa did not err when she explained why the ALJ had reasonably disregarded the report of Dr. Taren.[6] Accordingly, Byard's objections related to the report of Dr. Taren are overruled.

C.     **Objection Relating to Report of John Rohar, Ph.D.**

Lastly, Byard objects to the ALJ's reliance on the report of Dr. Rohar, who evaluated Byard in April 2012 in connection with Byard's previous application for Social Security benefits. Dr. Rohar found that Byard had no restrictions in activities of daily living and only mild difficulties in maintaining social functioning and concentration and persistence or pace, and he

---

[6]    Byard also contends that Dr. Taren's classification of his affective disorder as "severe" should have been given more weight in the disability analysis. This is incorrect. Although Dr. Taren indicated that Byard's affective disorder was "severe," this notation alone does not satisfy the regulatory definition of severity, as Dr. Taren made no findings as to the functional or occupational limitations that would result from the disorder because he had "insufficient evidence" to do so. *See* R. 54. If Dr. Taren did not have sufficient evidence to make a finding on the functional limitations resulting from the disorder, then Dr. Taren's classification of the disorder as severe cannot carry the weight that Byard would have it carry.

determined that Byard's organic mental disorder was non-severe. R. 48. In the ALJ's decision, she stated that although she did not find a basis for reopening Byard's prior application, she "ha[d] considered any applicable evidence in the record of the prior claim in rendering this decision on the current application." R. 14. With respect to Dr. Rohar's opinion in particular, the ALJ stated that she gave "weight" to the opinion and that his findings were "consistent with the evidence." R. 24. Addressing Byard's contention that it was improper for the ALJ to consider Dr. Rohar's findings, Magistrate Judge Caracappa determined that the ALJ did not err in so doing, observing that Dr. Rohar offered his opinion in April 2012, which was two months after Byard alleges he became disabled.[7]

Byard does not specifically object to anything in Magistrate Judge Caracappa's analysis of this issue. Rather, he reiterates his contention that the ALJ should not have considered Dr. Rohar's findings because that report was part of Byard's prior filing for Social Security benefits, which was rejected. But the ALJ may consider evidence predating the claim. *Id. See McKean v. Colvin*, 150 F. Supp. 3d 406, 414 (M.D. Pa. 2015) (citing *Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 804 (3d Cir. 2007). Further, unlike the report of Dr. Taren, Dr. Rohar's report made findings on Byard's functional limitations. *See* R. 48. Accordingly, the ALJ properly considered the evidence from Byard's prior Social Security claim regarding Byard's disorder, and Byard's objections related to the report of Dr. Rohar are overruled.

---

[7] Byard's first filing for benefits was on February 9, 2012, and alleged that his disability began on February 6, 2012. *See* R. 166-168. Dr. Rohar evaluated Byard on April 12, 2012. *See id.* at 48. Byard's first filing was denied on April 26, 2012. *See id.* at 57. The Social Security filing at issue here was filed in February 2013, almost a year after his first, and it alleges that the disability began on February 6, 2012, the same onset date as his first claim. *See* R&R 1.

## IV. Conclusion

After de novo review, this Court agrees with the Magistrate Judge that the ALJ's decision denying benefits is supported by substantial evidence. Byard's objections to the R&R are overruled, and the R&R is adopted. The Request for Review is denied, and the decision of the Commissioner of Social Security is affirmed. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge